UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERI LYNN DESHAZO,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>        Defendant. | CASE NO. 10-cv-5653<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. (See also Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 4; Consent to Proceed Before a United States Magistrate Judge, ECF No. 11). This matter has been fully briefed. (See ECF Nos. 19, 20, 23).

After considering and reviewing the record, the undersigned finds that the ALJ properly considered plaintiff's credibility and testimony. However, the ALJ failed to evaluate properly the medical evidence and did not determine properly plaintiff's residual functional capacity.

Therefore, this matter must be reversed and remanded to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, TERI LYNN DESHAZO, was forty-three years old on her alleged disability onset date of March 15, 2005 (Tr. 21, 249). She had an accident involving a lawnmower that resulted in the loss of all of her toes on her left foot. She also previously had been in a car accident (see Tr. 397). Plaintiff reported that she could no longer continue working because she could not stand or sit for longer than 20-30 minutes without her legs going numb; she also would lose her balance due to the loss of her toes after the lawnmower accident; she didn't sleep well due to pain in her legs; she suffered from tingling in her legs; and, she could hardly get out of bed because the tingling in her legs was so bad (Tr. 249). After plaintiff ran over her left foot with a lawnmower in 1986, she worked at a grocery store until March, 2005 (Tr. 250, 397). At this job, plaintiff cooked, ran the cash register, and stocked shelves (Tr. 250). Stocking the shelves entailed carrying groceries that weighed 25 pounds "frequently" and 50 pounds at a maximum (id.). At this job, she reported walking four hours a day and standing four hours a day (id.). She reported lifting and carrying groceries "all day long" (id.).

## PROCEDURAL HISTORY

On August 21, 2007, plaintiff filed applications for disability insurance benefits and supplemental security income benefits (Tr. 9, 151-56). Her applications were denied initially and following reconsideration (Tr. 76-79, 87-95). Plaintiff's requested hearing was held on December 22, 2009 before Administrative Law Judge M. J. Adams ("the ALJ") (Tr. 96-97, 30-69). On February 26, 2010, the ALJ issued a written decision concluding that plaintiff had the severe impairments of "status-post left foot toe amputations, status-post pleural effusions,

hypertension, degenerative disc and joint disease of the lumbar spine, cognitive disorder, dysthymia, panic disorder, dependant personality disorder, and alcohol dependence" (Tr. 11). However, the ALJ concluded that plaintiff had not been "under a disability, as defined in the Social Security Act, from March 15, 2005" through the date of the decision (Tr. 22).

On August 25, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. Plaintiff filed a complaint seeking judicial review of the ALJ's written decision (see ECF Nos.1, 3). In her Opening Brief, plaintiff contends that the ALJ: (1) did not evaluate properly plaintiff's credibility and testimony regarding her pain; (2) erred in the residual functional capacity determination; and, (3) failed to include all relevant limitations in the hypothetical question posed to the vocational expert (see ECF No. 19, p. 6).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9 (W.D. Wash. 2009).

## DISCUSSION

1. <u>The ALJ properly evaluated plaintiff's testimony and credibility and gave clear and convincing reasons not to credit fully plaintiff's allegations of debilitating pain</u>.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999); <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (<u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." <u>Fair</u>, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642 (*citing* <u>Beane v. Richardson</u>, 457 F.2d 758 (9th Cir. 1972); <u>Wade v. Harris</u>, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)); <u>Reddick</u>, 157 F.3d at 722 (citations omitted); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and

"unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester, supra, 81 F.3d at 834; Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (*citing* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If a plaintiff's

activities of daily living contradict her other testimony, this fact may provide support for an adverse credibility determination. See Orn, supra, 495 F.3d at 639. Nevertheless, the conflict cannot be trivial and must demonstrate clear and convincing reasons. See Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722.

Here, the ALJ discounted plaintiff's credibility because of inconsistencies between plaintiff's alleged limitations in her ability to function and her functioning as belied by her activities of daily living and the lay witness statements (Tr. 15-16). For example, the ALJ noted various activities of daily living that plaintiff engaged in according to her roommate, Larry R. Hanson ("Mr. Hanson"), including laundry, dusting, vacuuming, dish-washing and cleaning her shared apartment and around her apartment complex (Tr. 16, 265, 266). However, plaintiff indicated on her function report that she was not able to do "any of these things" (Tr. 259). The report by plaintiff's roommate was filled out three days after plaintiff filled out her function report (Tr. 264, 272). This is not a trivial inconsistency.

The Court also observes that plaintiff's ex-boyfriend, Kelvin Carlson ("Mr. Carlson"), with whom she lived for ten years, also indicated that plaintiff was capable of doing household chores such as cleaning, laundry, household repairs, ironing and mowing (Tr. 190, 192, 197). He further suggested that plaintiff did not suffer from any physical impairment or pain that prevented her from doing house or yard work (see Tr. 193; see also Tr. 19-20). Although plaintiff reported that she had lost jobs due to her impairments (Tr. 249), Mr. Carlson indicated that she had lost jobs due to drinking, stealing and being late (Tr. 196).

On plaintiff's daily activities report regarding her application for benefits, she indicated that she prepared fast food and microwave food and she did not indicate that she required any help with food preparation (Tr. 199). On her September 14, 2007 function report, filled out a

year and a half after her daily activities report, she indicated that she was unable to prepare her own food (Tr. 259). She also indicated that there had not been any changes in her cooking habits since her illness, injuries or conditions began (id.). The ALJ found that these allegations were inconsistent (Tr. 15-16). The ALJ also found that plaintiff's September 14, 2007 allegation of functional impairment was inconsistent with the report by plaintiff's roommate, Mr. Hanson, provided three days later (Tr. 15-16, 199, 265-72). On September 17, 2007, three days after plaintiff filled out her function report, on which she indicated that she was not able to prepare her own food, Mr. Hanson filled out a third-party function report on which he indicated that plaintiff was able to prepare her own food and that she helped out with meals (Tr. 259, 265, 266). Mr. Hanson specified that "she helps when we make a large dinner or meal, [and] likes to help make me lunch!" (Tr. 266). Mr. Hanson indicated that plaintiff prepared meals daily (id.). The finding by the ALJ that plaintiff's allegation that she was unable to prepare her own food was inconsistent with her earlier statements and her roommate's report was based on substantial evidence in the record (see Tr. 15-16, 199, 265-66).

  The ALJ also noted a third inconsistency regarding plaintiff's functional ability (Tr. 16). On plaintiff's daily activities report regarding her application for benefits, she indicated that she did not receive any help with her shopping (Tr. 199). However, on her function report, filled out approximately a year and a half later, she indicated that she didn't shop and that "others do it for me" (Tr. 260). Again, plaintiff's allegations on her function report regarding her limitations were contradicted by the function report filled out by her roommate three days later (see Tr. 268). Mr. Hanson, who knew plaintiff for five years, indicated that plaintiff shopped in stores "daily," although he indicated that she took longer to shop than do most people (Tr. 265, 268). The ALJ found a fourth inconsistency between plaintiff's allegation that she did not have any attention

span and her activities such as card-playing, watching television, bowling and dancing (see Tr. 16, 220, 261, 269).

Finally, in addition to inconsistencies, the ALJ cited "normal physical examination findings" and a lack of objective medical evidence to substantiate the level of incapacity as alleged by plaintiff (Tr. 12, 20). Regarding plaintiff's allegations of disabling hip pain, the ALJ noted that a January 2008 X-ray indicated that plaintiff's hip joints were "'maintained and symmetrical bilaterally.'" (Tr. 12). The ALJ also noted the conclusion that plaintiff's hips were "normal" by radiologist Dr. Thomas Rafoth, M.D.'s as well as by a Washington State Department of Social and Health Services evaluator (id.).

For the stated reasons and based on the relevant record, the Court concludes that the ALJ provided clear and convincing reasons for the determination not to credit fully plaintiff's testimony. See Smolen, supra, 80 F.3d at 1283-84.

2. The ALJ erred in reviewing the medical evidence and determining plaintiff's residual functional capacity.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample, supra, 694 F.2d at 642; see also Waters, supra, 452 F.2d at 858 n.7; Calhoun, supra, 626 F.2d at 150. However, the ALJ must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of either a treating or examining physician or psychologist. Lester, supra, 81 F.3d at 830 (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial

evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

    a. Dr. Ronald Bergom, M.D. ("Dr. Bergom") (Tr. 397-99)

The ALJ included the following discussion regarding the medical opinion evidence from Dr. Bergom:

> In April of 2006, the claimant met with consultative examiner, Ronald Bergom, MD, when she still lived in North Dakota (internal citation to Ex. 7F).

> Dr. Bergom noted that the claimant smelled of alcohol and acted somewhat intoxicated during the physical examination (internal citation to Ex. 7F/1-2). He found that despite the claimant's complaints of back pain, she had a 'normal range of motion of her back and all other joints" (internal citation to Ex. 7F/2). Dr. Bergom also found that the claimant had 'normal sensory, motor and reflex response in the extremities without evidence of muscle atrophy' (internal citation to Ex. 7F/2). He indicated that the claimant had a somewhat impaired gait and station because of the loss of her left toes, however, Dr. Bergom added that the claimant was able to get up and around the examination table without difficulty (internal citation to Ex. 7F/2). Based on the in-person interview and physical examination findings, Dr. Bergom concluded that the claimant was not disabled for jobs, although, he opined that she might have difficulty with a job that required prolonged standing or walking or lifting or pushing (internal citation to Ex. 7F/3). He added that her chronic alcoholism remained an issue and was probably her most significant illness (internal citation to Ex. 7F/3). Dr. Bergom's opinion is generally consistent with the overall record that shows that the claimant is not as limited as she has alleged, however he does not provide specificity regarding what he means by 'prolonged' standing or walking. Accordingly, only moderate weight can be given to Dr. Bergom's opinion.

(Tr. 16).

The ALJ found that plaintiff retained the residual functional capacity ("RFC") to "stand, walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday" (Tr. 14). The ALJ also found that plaintiff could "frequently climb ramps and stairs, balance, and crawl; and, occasionally climb ladders, ropes and scaffolds" (id.). This appears to be contrary to Dr. Bergom's opinion that plaintiff "might have difficulty with any job that required prolonged standing or walking or lifting or pushing" (Tr. 399). The ALJ disregarded this aspect of Dr. Bergom's opinion because Dr. Bergom did "not provide specificity regarding what he mean[t] by 'prolonged' standing or walking" (Tr. 16). Although Dr. Bergom did not specify how many hours of standing or walking plaintiff was limited to performing, this is not a legitimate reason to disregard his opinion that she might have had difficulty with prolonged standing or walking in the context of her ability to function in the workplace. This opinion by Dr. Bergom is consistent

1 with the record as a whole and is supported by the objective medical evidence, including

2 plaintiff's lack of any toes on her left foot.

3       The ALJ "has an independent 'duty to fully and fairly develop the record.'" Tonapetyan

4 v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* Smolen v. Chater, 80 F.3d 1273, 1288

5 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel."

6 Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing* Driggins v. Harris, 657

7 F.2d 187, 188 (8th Cir. 1981)). However, the ALJ's duty to supplement the record is triggered

8 only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation

9 of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242

10 F.3d at 1150. Here, the ALJ indicated that because of a lack of specificity, it was not clear what

11 Dr. Bergom's meant by his opinion that plaintiff "might have difficulty with any job that

12 required prolonged standing or walking or lifting or pushing" (see Tr. 16, 399). The ALJ

13 suggested that it was not clear if Dr. Bergom considered six hours out of eight hours in a

14 workday to be "prolonged." This indicates that the ALJ should have developed the record

15 further, such as by seeking a follow up opinion by Dr. Bergom with greater specificity or with

16 specific assessments of plaintiff's functional limitations in regards to work activity. See Mayes,

17 276 F.3d at 459-60.

18       The Court concludes that Dr. Bergom's failure to specify how many hours he considered

19 to be prolonged is not a legitimate reason to disregard his medical opinion that plaintiff might be

20 limited in her ability to stand and walk. See Van Nguyen, 100 F.3d at 1466. The ALJ must

21 explain the reasons underlying any opinion that differs from the opinion of the doctors. See

22 Reddick, supra, 157 F.3d at 725. The ALJ here adopted a RFC that appears contrary to Dr.

23 Bergom's opinion without adequately explaining why the ALJ's assessment of plaintiff's ability

24

1 to stand and walk was more correct than the assessment by Dr. Bergom that she may have been
2 limited in these abilities.

3 The Court also notes that the ALJ appears to have relied in part on an opinion by a non-examining evaluator, Marlin Johnson, M.D. ("Dr. Johnson") when discrediting Dr. Bergom's opinion regarding plaintiff's physical ability (Tr. 16). The ALJ noted that Dr. Johnson's opinion of plaintiff's functional capacity was less restrictive, apparently referring to that of Dr. Bergom (id.). The ALJ chose to adopt Dr. Johnson's opinion on the basis that he had the benefit of a more fully developed record (id.). However, as Dr. Bergom examined plaintiff on April 11, 2006 and Dr. Johnson provided his evaluation on May 1, 2006, it is unclear what additional record the ALJ intended to reference (see Tr. 400-07). Dr. Johnson did not cite any medical record after that provided by Dr. Bergom after Dr. Bergom examined plaintiff (see id.). To disregard the opinion of Dr. Bergom – an examining physician's opinion, in favor of the opinion of Dr. Johnson -- a non-examining physician, "the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen, supra, 100 F.3d at 1466. Based on the relevant record, the Court concludes that the ALJ did not do so here. See id.

b. Richard W. Washburn, Ph.D. ("Dr. Washburn")

Dr. Washburn examined plaintiff on October 4, 2007 (Tr. 443-51). He conducted a mental status examination and various tests of plaintiff's cognitive abilities (445-51). Dr. Washburn opined that plaintiff "might be trained to do more sedentary but routine work but would not be able to arrange training and placement without vocational rehabilitation support" (Tr. 448). He also opined that because of plaintiff's "vulnerability to stress she would probably need considerable support during training and placement" (id.). Dr. Washburn concluded that

1  plaintiff likely would "not be able to obtain and maintain full time, gainful employment unless

2  her special needs were met by vocational rehabilitation services" (id.).

3　　　　The ALJ gave "great weight" to the opinion by Dr. Washburn (Tr. 17). However, the ALJ

4  did not credit plaintiff's special needs for vocational rehabilitation services, as opined by Dr.

5  Washburn, when assessing plaintiff's residual functional capacity ("RFC") (see Tr. 14).

6  Although an ALJ "need not discuss *all* evidence presented," the ALJ must explain why

7  "significant probative evidence has been rejected." Vincent, supra, 739 F.2d at 1394-95 (*quoting*

8  Cotter, supra, 642 F.2d at 706-07). Here, the ALJ failed to explain why the significant and

9  probative evidence regarding plaintiff's special vocational rehabilitative needs was rejected and

10 not included within the determination of plaintiff's RFC. This was legal error, especially as the

11 ALJ gave Dr. Washburn's opinion "great weight" and relied on his assessment regarding

12 plaintiff's mental capabilities and limitations (Tr. 17).

13　　　　c.　Dana Harmon, Ph.D. ("Dr. Harmon")

14　　　　Dr. Harmon examined plaintiff in April, 2009 (Tr. 969-78). She diagnosed plaintiff with

15 "back injuries; loss of toes; chronic pain; limited functioning; major depressive disorder,

16 recurrent, severe; attention-deficit/hyperactivity disorder (ADHD); and, alcohol dependence, in

17 partial remission" (Tr. 970). Harmon assessed plaintiff's functional abilities as markedly or

18 severely impaired in multiple areas of functioning (Tr. 971).

19　　　　The ALJ gave "little" weight to Dr. Harmon's assessment of plaintiff's functioning in

20 part because Dr. Harmon concluded that plaintiff was chronically mentally ill and markedly

21 limited in her ability to care for herself, which was "inconsistent with the claimant's own

22 statements regarding her ability to perform self-care, and the statements from the claimant's

23 friend and roommate, Larry Hanson, who stated that the claimant was able to go out every day

24

1  on her own, clean the house, and help prepare meals (internal citation to Ex. 19E; 20E)" (Tr. 19).
2  Based on the relevant record, the Court concludes that the ALJ's finding of inconsistencies
3  between Dr. Harmon opinions and plaintiff's statements as well as the statements by plaintiff's
4  roommate is supported by substantial evidence in the record (see, e.g., Tr. 265-69).

5  The ALJ also gave little weight to the opinion by Dr. Harmon based on a finding that her
6  opinion was inconsistent with the objective medical evidence and contradicted by the opinions
7  by non-examining doctors, Drs. Hoskins and Brown (see Tr. 19). Although Dr. Harmon
8  examined plaintiff and generally the opinion of an examining physician is given more weight
9  than that of a non-examining doctor, the ALJ may give lesser weight to the examining doctor's
10 opinion when the ALJ provides specific, legitimate reasons in support of such decision. See Van
11 Nguyen, supra, 100 F.3d at 1466. Based on the relevant record, the Court concludes that the ALJ
12 gave specific, legitimate reasons in support of the little weight given to Dr. Harmon's opinion.

13 Based on the relevant record and the reasons stated, the Court concludes that the ALJ did
14 not evaluate all of the medical evidence properly when determining plaintiff's RFC. The ALJ did
15 not provide specific and legitimate reasons for rejecting the relevant opinions of Drs. Washburn
16 and Bergom. Because the hypothetical presented to the vocational expert was based on this
17 improper evaluation of the medical evidence, the ALJ's reliance on the testimony by the
18 vocational expert for the conclusion that jobs existed in the national economy for an individual
19 with plaintiff's RFC, was not proper. Defendant must carry the burden at this step-five finding.
20 See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). For these reasons, this matter must
21 be reversed and remanded to the administration for further consideration.

3. <u>This matter should be remanded to the administration for further consideration</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at \*\*17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Harman</u>, 211 F.3d at 1178 (*quoting* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. <u>See</u> <u>Smolen</u>, 80 F.3d at 1292. There is a large volume of medical and other evidence and most of the opinions in the record are contradicted.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722; <u>Andrews</u>, <u>supra</u>, 53 F.3d at 1043. If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample</u>, <u>supra</u>, 694 F.2d at 642; <u>see</u> <u>Waters</u>, <u>supra</u>, 452 F.2d at 858 n.7; <u>see</u> <u>Calhoun</u>, <u>supra</u>, 626 F.2d at 150. Therefore, remand is appropriate to allow the administration the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's residual functional capacity and the remaining steps of the sequential disability evaluation as necessary. <u>See</u> <u>Sample</u>, 694 F.2d at 642.

4. <u>The ALJ did not demonstrate bias</u>.

Administrative Law Judges, ALJs, "are presumed to be unbiased." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). To rebut this presumption, one must show a "conflict of interest or some other specific reason for disqualification." <u>Id.</u> at 857-58 (*citing* <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1089 (9th Cir. 1999)). Although ALJs occasionally reveal irritation or

anger, "'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women … sometimes display' do not establish bias." Rollins, 261 F.3d 858 (*quoting* Liteky v. United States, 510 U.S. 540, 555-56 (1994)).

Here, although plaintiff contends that this matter should be remanded to a different Administrative Law Judge following remand, plaintiff has made no attempt to rebut the presumption that the ALJ here was unbiased. Therefore, plaintiff has not demonstrated any conflict of interest or any other specific reason for disqualification and the Court does not require that this matter be remanded to a different Administrative Law Judge following remand. See Rollins, supra, 261 F.3d at 857-58.

CONCLUSION

The ALJ did not provide specific and legitimate reasons for rejecting the relevant opinions of Drs. Washburn and Bergom. Therefore, the ALJ did not evaluate all of the medical evidence properly when determining plaintiff's RFC. In addition, the step-five determination by the ALJ cannot be upheld.

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 27th day of September, 2011.

/s/ J. Richard Creatura
J. Richard Creatura
United States Magistrate Judge